UNITED STATES of America ex rel.
Arthur JACKSON, Appellant,

v.

David N. MYERS, Superintendent, State
Correctional Institution, Graterford,
Pennsylvania.

No. 16051.

United States Court of Appeals
Third Circuit.

Submitted on Briefs Dec. 9, 1966.

Decided March 16, 1967.

Arthur Jackson, pro se.

Michael J. Rotko, Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa. (Alan J. Davis, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, Pa., on the brief), for appellee.

Before STALEY, Chief Judge, and McLAUGHLIN and FORMAN, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

This is an appeal by Arthur Jackson from an order of the United States District Court for the Eastern District of Pennsylvania, denying, after an evidentiary hearing, the appellant's petition for a writ of habeas corpus.

The appellant pleaded guilty to a charge of aggravated robbery on July 25, 1962, and was sentenced by the Court of Oyer and Terminer in Philadelphia to a term of ten to twenty years. At the time of sentencing, the judge had before him an "Extract of Criminal Record" prepared by the Police Department of Philadelphia which listed not only a prior criminal conviction of the appellant, but also his juvenile record and occasions when he had been taken before a magistrate and discharged. The appellant attacks the sentence as unconstitutionally imposed on the following grounds: The sentencing judge considered his prior juvenile record in violation of the Act of June 2, 1933, P.L. 1433, §§ 1 and 19; 11 Pa.Stat.Ann. § 261 and in addition did so although the appellant was without counsel in the juvenile proceedings. He considered his discharges by magistrates although they are without probative value as prior culpable acts. He misread the record as though some of the juvenile offenses and magistrates' discharges were adult criminal convictions, so that the sentence was based upon

materially incorrect assumptions. His counsel's effort to correct the error was inadequate to the extent that the appellant was denied effective assistance of counsel.

■ The District Court properly rejected the appellant's first claim that he was denied the benefit of the Pennsylvania Act of June 2, 1933, providing that the disposition of a child in a juvenile court shall not be admissible as evidence against him in a proceeding in any other court. The Pennsylvania Supreme Court decided well prior to the date of appellant's conviction that the statute bars the use of juvenile records only as evidence in a criminal proceeding to determine innocence or guilt, but does not bar its use for the purpose of determining sentence.[1]

■ Nothing in the Constitution prevents a sentencing judge from considering a defendant's juvenile record qua a juvenile record. A judge is permitted, if not obliged,[2] to give weight to a wide variety of factors, including many not officially documented, which reflect upon the rehabilitative needs of the defendant and the insulative needs of society.[3] In particular, a juvenile record may, as in this case, convey instructive evidence of the defendant's probable response to remedial efforts. So long as a judge considers such a record in its proper perspective—i. e., as a reference to non-criminal proceedings where no counsel was required and where the purpose was not penal but curative[4]—there can be no ground for complaint. Thus the absence of counsel at juvenile proceedings is a factor which limits the use of the juvenile record, but does not forbid it.

■■ We agree that discharges before a magistrate should have no place in determining sentence. The Supreme

1. Commonwealth ex rel. Hendrickson v. Myers, 393 Pa. 224, 144 A.2d 367 (1958).

2. Cf. Peters v. United States, 113 U.S.App. D.C. 236, 307 F.2d 193 (1963).

3. See Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); United States ex rel. Gerchman v. Maroney, 355 F.2d 302, 312 (3 Cir. 1966).

4. In re Holmes, 379 Pa. 599, 109 A.2d 523 (1955); In re Mont, 175 Pa.Super. 150, 103 A.2d 460 (1954).

Court of Pennsylvania has stated that the purpose of a hearing before a magistrate is "to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection." [5] A discharge therefore implies the presence of one or both of these factors. However, relief on this basis would depend upon a showing by the defendant not only that the discharges were considered as evidence of culpable activity, but that as such, they were determinants in setting the length of the sentence. Insofar as such a showing has been made in this case, it is subsumed in the consideration of the next issue.

The record supports the appellant's contention that his sentence was imposed by reference to materially inaccurate facts. At page 30 of the trial record the following exchange appears:

"The Court: He has three robberies by strongarm.

"[Appellant's Counsel]: For six years he has not been convicted of a crime.

"The Court: You mean he has not been caught."

And at page 31, the judge in passing sentence stated:

"On Arthur Jackson, *because* he had the longer record and had *several strong arm jobs*, I will sentence him * * * " [Emphasis added.]

█ In fact, the "Extract of Criminal Record" did have three listings for "Robbery by Strongarm" [6] but the first was a charge when the appellant was fifteen years old and resulted in no dis-

---

5. Commonwealth ex rel. Maishenhelder v. Rundle, 414 Pa. 11, 15, 198 A.2d 565, 567 (1964).

6. The appellant's "Extract of Criminal Record" is reproduced below:

"NAME    Date of Birth
     JACKSON, ARTHUR    5–15–37

ADDRESS    Sex M    Race
     2219 N. Cleveland St.    Negro
     1806 W. Jefferson St.

| ARRESTED | CHARGE | DISPOSITION | JUDGE |
|---|---|---|---|
| 3–1952 | A & B by Fist | Prob. Ref. to BBA | |
| 1–1953 | Robbery by Strongarm | No. Dis. | |
| 5–16–1953 | Burglary | 3 Mos. Pennypack House | |
| 11–1953 | Larceny of Auto | Rest. & Prob. | |
| 9–26–54 | Delinquency | Indet. to Maj. Camp Hill | Propper |
| 9–28–56 | Robbery by Strongarm | 6 to 23 Mos. C.P. | Waters |
| 5–1–56 N.C.Det's | Robbery by Strongarm | Dis. | Mag. Levin |
| 4–16–59 | Robbery, Agg. A & B and Consp. | Disch. | Mag. Papa |
| 3–4–61 39th D. | Rape, Aslt. W/Int. to Ravish, Ind. Aslt., A & B and Consp. | | |
| 5–02–62 23rd D. | Robbery, Assault with Intent to Kill, Larceny, RS G, Conspiracy & Viol. Uniform Firearm Act" | | |

position. On a second strongarm charge he had been discharged by a magistrate. The *only* criminal conviction on his record was for strongarm robbery for which he incurred a sentence of 6 to 23 months' imprisonment. Thus while the judge stated in effect that he was dealing with a three-time offender, the record showed a conviction for only one criminal offense. This being true, it also appears that in relation to his codefendants, the appellant did not have "the longer record." [7]

In Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), the sentencing judge made a similar error, as related in the following passage: [8]

"* * * [W]e learn from the record that actually the charge of receiving the stolen saxophone had been dismissed and the prisoner discharged by the magistrate. But it savors of foul play or of carelessness when we find from the record that, on two other of the charges which the court recited against the defendant, he had also been found not guilty. Both the 1933 charge of larceny of an automobile, and the 1938 charge of entry to steal and larceny, resulted in his discharge after he was adjudged not guilty. We are not at liberty to assume that items given such emphasis by the sentencing court did not influence the sentence which the prisoner is now serving."

In *Townsend,* the defendant was without counsel when the sentence was passed, while in the instant case, counsel was present. The Supreme Court linked the error in the factual basis for sentencing with the absence of counsel as follows: [9]

"* * * Consequently, on this record we conclude that, while disadvantaged by lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand."

Recognizing that *Townsend* rests upon this dual basis, we nevertheless think that the facts of the present case entitle the appellant to relief. The Supreme Court saw the wrong incurred as careless or designed sentencing on the basis of materially untrue facts and assumed that such injustice would normally be precluded by the presence of counsel. This, of course, is premised upon the effective protection by counsel at this juncture, not merely his physical attendance. The District Judge, in another case,[10] stated with regard to a *counseled* defendant:

"We recognize that on a guilty plea the relator was not entitled to have much said on his behalf but he was entitled to *not have material misstatements* read to the Court while his counsel stood mute. Townsend v. Burke * * *."

Here counsel stood mute in regard to those misstatements that required correction. His only utterance and purported objection was "For six years he has not been convicted of a crime." This, as shown in context above, could only have been a plea for clemency on other grounds, for if, by some vague implication, it was meant to correct the judge's erroneous belief, it was plainly inadequate (1) in its terms, since both events mistakenly thought by the court to have been convictions occurred more than six years before the date of sentencing, and (2) in its effect, since the judge's repeti-

---

7. The criminal record of one of the appellant's codefendants showed three prior criminal convictions for disorderly conduct, unlawful possession and sale of narcotics, and aggravated assault and battery. There were in addition, a number of discharges by magistrates and one charge of aggravated assault and battery for which the codefendant failed to appear.

8. 334 U.S. at 740, 68 S.Ct. at 1255.

9. Id. at 740–741, 68 S.Ct. at 1255.

10. United States ex rel. [John] Jackson v. Rundle, 219 F.Supp. 538, 541 (E.D.Pa. 1963) [Emphasis in original.].

tion of the same erroneous belief after this statement by counsel indicates that he was not able to glean any such hidden meaning from counsel's remark. During the course of the evidentiary hearing in the present case the late Judge Grim, who died before the opinion of the District Court was filed, asked:

> "* * * [B]ut don't you think aggressive, competent counsel would probably have said, 'Oh, no, there weren't any three robberies by strong arm cases. There was one in which he was convicted. On the other two, he was only arrested, and I think you must read the record,' * * *?"

We think the question posed requires an affirmative reply.

The District Court found that the foregoing misstatements had been made, but did not think that the "judge was so mistaken as to relator's criminal background as to raise a constitutional question." This conclusion was based on two grounds, (1) that the judge had read aloud the appellant's criminal record shortly before making the statements, and (2) that the judge "may well have believed that the relator had committed the offenses or may well have felt that it was a matter of indifference since there was evidence of several other offenses of a violent nature."

The first ground is insufficient to distinguish the case from Townsend v. Burke, supra, since there the court also read directly from the defendant's criminal record. More important is that the transcript of the sentencing proceeding clearly shows that after having read the long list of appellant's "Extract of Criminal Record," the judge *twice* made statements regarding the contents of the record which were patently inaccurate, indicating without doubt that he had made an erroneous recollection of what he had read, uncorrected by counsel.

The second ground advanced, that the sentencing judge may not have given significant weight to these erroneous facts, is not only contradicted by the judge's own statement that the appellant was to receive his lengthy sentence *"because* he had the longer record and several strongarm jobs,"[11] [Emphasis supplied.], but in addition, is an assumption specifically forbidden by the Supreme Court in the *Townsend* case:[12]

> "We are not at liberty to assume that items given such emphasis by the sentencing court did not influence the sentence which the prisoner is now serving."

Moreover, the record showed no criminal convictions for "other offenses of a violent nature."

While the transcript of the sentencing proceeding speaks for itself, it is nonetheless instructive to note that the sentencing judge issued an order vacating the appellant's sentence on February 24, 1965. Although this order was legally ineffective, since the time within which he had power to set aside the sentence under Pennsylvania law had expired, it too suggests that the judge believed himself to have been in error.

This is not a case involving a "mere error in resolving a question of fact on a plea of guilty."[13] With the facts of appellant's prior record undisputed and before the court, there was no justification for basing his sentence on a materially inaccurate foundation. Similarly, the

---

11. It is of no concern here that the state court suspended sentence on three other indictments against the defendant arising from the same transaction—a not uncommon practice. The due process problem here is concerned with the method by which the sentence was passed, not the result, so long as the result is within statutory limits. Thus, just as the severity of a defendant's sentence alone constitutes no ground for relief, Townsend v. Burke, 334 U.S. at 741, 68 S.Ct.

1252, a measure of leniency in comparison to the maximum calculable sentence does not redeem an otherwise unsupportable procedure. Such leniency would be important only insofar as it might undercut the contention that the sentencing judge operated upon mistaken beliefs.

12. 334 U.S. at 740, 68 S.Ct. at 1255.

13. 334 U.S. at 741, 68 S.Ct. at 1255.

price of correcting the injustice is insubstantial; the appellant can readily be resentenced.

The order of the United States District Court for the Eastern District of Pennsylvania of May 4, 1966 denying the writ of habeas corpus therefore will be vacated and the case will be remanded with instructions to grant the writ, with the qualification that the appellant be held in custody for a period of sixty days to permit the Commonwealth of Pennsylvania an opportunity to resentence him.[14]

---

14. See Bauers v. Yeager, 261 F.Supp. 420 (D.N.J.1966).